## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Edward Siguel,                                    )
501 Crooked Creek Dr, Rockville, MD 20850

Plaintiff,                                        )

v.                                                )        Civil Case No. DLB 25 CV 3145

King Farm Citizens Assembly, Inc. ("**KFCA**"))
300 Saddle Ridge Cir, Rockville, MD 20850

Susan Beckerman, KFCA Chair of Trustees )
501 King Farm Blvd, #208, Rockville, MD 20850

Paul Scott, KFCA President                       )
unknown home address in Montgomery County, MD)

Defendants                                        )

USDC - GREENBELT
25 SEP 23 AM 9:29

### COMPLAINT FOR VIOLATION OF HOUSING and OTHER RIGHTS

NATURE OF THE ACTION. **Summary paragraph issues, claims** for Context.

1. Plaintiff/ aggrieved homeowner ("**Owner**") and the Home Owners Association ("**HOA**")

King Farm Citizens Assembly, Inc. ("**KFCA**" = "**Assembly**") disagree about the rights of a

disabled Owner to modify his house exterior for use and/or full enjoyment, authorized by **Fair**

**Housing Act and amendments, (FHA).**

2. KFCA mandates that the Owner spend involuntary time, labor, movement (with adverse

effects on him because of his disability), to change his home's appearance to benefit **KFCA**, or

be punished via administrative proceedings, litigation, financial, social harm.

3. The parties disagree over KFCA 'rules', written to demand maintenance on exterior

appearances/aesthetics vs. FHA authority to allow changes to better use and enjoy house.

**4.** The Owner purchased and modified his house to meet his needs as he ages in place, allowing

him to read, write, enjoy his garden, and spend most of his time there.

**5. KFCA demands that Owner now install, maintain forever, a decorative balcony/ balustrade on his roof porch. Said balustrade harms** use and enjoyment of the house. Owner requests no balustrade, which does not harm others (such as a protruding branch) or changes KFCA purpose. These 'particularized' injuries affect the plaintiff in a personal way.

6. FHA was written to supersede HOAs' alleged rights to **decide how Owner's house exterior must look,** restrict use and enjoyment of the house.

**JURISDICTION AND VENUE. Federal law.**

**7.** Court has jurisdiction over this action and may grant relief herein pursuant to 28 USC §1331; §3614(a); 28 USC §1343, 28 USC §2201-2202 (Creation of remedy, relief), federal and state laws, and supplemental jurisdiction, 28 USC §1367. Venue is in Montgomery County ("**MoCo**"), Maryland, under 28 USC §1391, where the events, acts, or omissions giving rise to the claims took place, Owner resides, and the Defendants worked or reside.

**DEFENDANTS; Organization of KFCA**

**8.** Defendant **KFCA** is a corporation incorporated in MD. Its principal office is at 300 Saddle Ridge Circle, Rockville, MD 20850. Formation/Registration: 03/17/1997. The Corporation was forfeited 10/7/1999; REVIVED 4/20/2000. The public history with business entities shows KFCA violated Maryland law by filing annual reports late. Exh PO25.

9. **Defendant KFCA is an HOA housing entity.** The **KFCA Charter** ("**Charter**") and Bylaws state the purpose and meaning of KFCA and its rules. **Community Codes** are Equity Resolutions and Administrative Resolutions adopted by the Board of Trustees ('**BoT**' = **Trustees**) of the **Assembly** (= **KFCA**), which include rules for owners. **Founding Documents** = KFCA Charter + the Articles of Incorporation + Bylaws of KFCA. **Governing documents** = Founding Documents + Community Codes.  See Exh PO5 for details.

10. Herein, **KFCA and associates** means KFCA and persons working with or for KFCA to interpret or enforce exterior appearances, demands against Owner.

11. KFCA has two parts: common areas, and homes, including hundreds of Single-Family Homes (**SFH**). KFCA has administrative components (not separate legal entities): managers who supervise KFCA (usually employees); a Board of Trustees (**BoT**) with 5 members, a Board of Code Compliance (**BoCC**) which enforces rules; an Architectural design trust (**ADT**), a Community Architect ("**CA**"), one individual. KFCA requires Design Review Applications (**DRA**) to approve changes to the exterior of houses.

12.  KFCA appoints the members of BoCC, ADT, Architect. Trustees, President are elected.

13. **Community Architect** ("**CA**") is nominated by President, approved and appointed by Trustees. Must have agreement/contract with KFCA for its services. Exh.PO5.  He reviews, approves or rejects, DRA from Owner proposing changes to his house.

14.  Duties and authority of President, BoT, BoCC, ADT, are described in Founding Documents. **Community Codes** cannot be inconsistent or contradict with the Charter; they explain how to enforce KFCA rules and conduct business, e.g., how to apply for KFCA approvals. Exh.PO5.

*15.* The founding documents gives the President executive power, the Trustees legislative power, the BoCC judiciary power. Ruff is a KFCA manager. Her Supervisor is KFCA President Paul Scott. https://kingfarm.org/kfca-president/.

16. *KFCA founding documents describe and limit KFCA remedies,* authority, to allow KFCA to correct alleged aesthetic violations, but do not give the right to compel Owner to do it. If Owner refuses to make corrections, KFCA has no authority to demand involuntary labor (but KFCA can make repairs themselves and charge when appropriate).

17. Defendants, during some of these events, resided in Rockville, MD 20850. At times, Scott

was a Trustee or President of KFCA; Beckerman was a Trustee or Trustee Chair, home at 501 King Farm Blvd, #208, Rockville, MD 20850. KFCA, Scott, Beckerman required communications via email. Susan Beckerman, at trustees@kingfarm.org; Scott at president@kingfarm.org.

18. KFCA threats of administrative procedures, fines for failure to correct appearance violations, are not allowed by KFCA founding documents (see Exh PO5) for matters regarding aesthetics, appearances. Founding documents supersede any code (resolutions by Trustees) so that Owners know what they are buying and important rules are not changed later by Trustees.

19. KFCA, Scott, via Ruff, demanded Owner install 'balustrade' (decorative, fake, balcony made of columns that support horizontal railings). KFCA, KFCA President, Trustees, have the power, authority, to allow Owner's requests, determine compliance with KFCA rules, and allow no balustrade. Previously, Owner had a dispute about shutters. KFCA demanded them; Plaintiff requested not to have them. KFCA President met with Plaintiff, agreed to not have shutters.

20. KFCA requires Owner apply every time he wants to modify the exterior of his house to better use or enjoy his home. A design review application ("DRA") requires extensive explanations, diagrams, consultations with neighbors, etc.

21. KFCA process to review applications requires detailed architectural specifications and drawings not required by FHA to justify an FHA exception. See Exh.PO3 for details.

22. A KFCA administrator sends Owner notices of alleged violations, demands Owner 'correct' alleged violations. In 2024-5, KFCA demanded Owner submit a new DRA with alternatives to install a new balustrade on his porch roof. Exh.PO7. Owner submitted the DRA. Exh.PO8.

23. FHA authorizes Owner to make changes that are reasonable and necessary to use, enjoy his house, and require KFCA to implement its demands with the least discriminatory adverse effect.

24. Purpose of KFCA is to improve welfare of Owners, maintain common areas, pool. KFCA founding documents allow changes that benefit Owner, increase his welfare. See KFCA Charter §1-103, Community Plan. Exh #PO5.

25. KFCA has a list of "design guidelines" or "standards" for the exterior of a house (structures).

**26.** KFCA has rules about Community aesthetics, written and/or interpreted by Architect, Architectural Design Trust ("**ADT**"), managers or administrators, **BoCC**, Trustees, President.

27. **KFCA** claims the responsibility to enforce founding documents, its Charter, interpret guidelines to maintain aesthetics to benefit the community. If KFCA does not have such responsibility, it cannot enforce appearance rights (aesthetic guidelines).

28. Charter requires that KFCA enforcement of exterior appearances meet the goals of KFCA Charter, benefit the Owner. Here, involving aesthetics, enforcement, remedies, are limited to ask Owner to make changes or KFCA makes changes and bill Owner if appropriate.

29. The complaint refers to **KFCA Charter** ("**Charter**") Sections as rules or covenants or articles or restrictions. Housing laws refer to **rules, policies, practices, or services (RPPS)**. The KFCA governing documents refer to "activities in King Farm" (see KFCA rule §3-101).

**30.** A Charter section, activity, decision, action, demand letter, or code, is a Rule, Policy, Practice, Service ("**RPPS**") used in federal housing laws.

**Plaintiff, aggrieved Owner**

*31.* Owner owns a house, where he lives, a single-family home (**SFH**), a dwelling, includes the lot, with an outside porch with a roof, trees, flowers, plants, a yard. The house has reinforced floors, commercial-grade wiring (20 Amps), work rooms to match the family's needs, bookcases for thousands of books and research papers, multiple storage areas, etc.

32. ***The explicit words of Charter sections to protect*** Owner ***from onerous maintenance were a***

*substantial factor in the decision to pay for substantial house options (e.g., stronger floors,*

*insulation, etc.). KFCA administrators assured* Owner *that they would comply with disability*

*anti-discrimination of public housing laws and would agree to reasonable modifications and*

*accommodations. When Owner was completing due diligence before buying his house, KFCA*

*administrators told* Owner *that if he needed help with house maintenance, KFCA would help*

*because that was the purpose of KFCA, explicitly stated in its Charter.*

33. KFCA rules and assurances were essential because Owner had disabilities at time of

purchase that made it difficult or impractical to maintain exterior appearances of his house.

Exh.PO3. KFCA management assured Owner that, if KFCA found alleged violations to exterior

appearances, Owner could fix them, or KFCA would fix or waive them in compliance with

KFCA Charter. See Exh.PO3 with details on conversations with management, KFCA rules.

**34.** The dispute involves an aggrieved Owner with disabilities within the meaning of 42 USC

§3602(h) [1]. He lives at his home, a residential dwelling. Defendants knew of these issues.

**35. Adverse consequences of disability.** Owner's disability causes pain, muscular weakness,

fatigue, reduced stamina, reduced time for life activities, damages organs, including bladder,

prostate, heart, and mental disruptions (loss of focus, inability to concentrate, think, write, sleep,

etc.). The disabilities require frequent daily treatment. See Exh. PO3, PO4.

36. **Compared with a healthy person**, Owner needs more time daily for health care, for doing

ordinary and KFCA demanded tasks, gets tired faster.[2] Owner needs frequent resting time.

37. Owner's disability and pain reduces stamina, limits major life activities like self-care,

nutrition, regulating electrolytes, writing, thinking, concentration, sleeping, using the phone,

---

[1] Owner uses the terms "disability" or "handicap." For purposes of the Act, the terms have the same meaning. See *Helen L. v. DiDario*, 46 F.3d 325, 330 n. 8 (3d Cir.)

[2] Owner requires ½+ hr. to do what healthy men can do in 5 minutes (many times per day). Owner with intestinal disorders uses the bathroom frequently, requires specially prepared meals. Owner gets tired easily, requires resting time, more time for tasks, monitoring biomarkers, etc.

physical tasks, supervising contractors, etc. [3]

38. Demands for time and labor from KFCA associates have an adverse, discriminatory impact because Owner has less "**discretionary**" time and physical ability than healthy owners.

39. Owner spends most time at his home. Owner needs frequent access to a bathroom. Owner uses, enjoys his yard, his house, to walk amongst the plants, studying, writing, thinking, caring for his children, etc. Owner conducts research to improve diagnosis and treatment of chronic disease, and requires high concentration, low stress, little pain, adequate sleep.

40. The time and labor to comply with KFCA demands reduce the physical, mental ability to maintain quality of life. Owner must reduce unnecessary tasks, minimize unnecessary maintenance, reduce movement, necessary to ameliorate the adverse effects of his disabilities.

41. Over several years, Managers requested proof of Owner's medical disabilities. Owner provided KFCA with medical reports of health disorders, its consequences, disability issues.

42. Owner requested FHA compliance, least discriminatory action, the Reasonable Accommodation (**RA**) or Modifications (**RM**), to NOT have a "**balustrade**" on his porch roof, or, if not feasible, have KFCA install and maintain it.

43. Regarding exterior appearances, KFCA rules allow Defendants to: (a) waive any alleged violations, or explain how to correct them, but without demanding corrections or labor; or (b) allow Owner's modifications; or (c) correct the alleged violations (required by KFCA Charter), e.g., do the repairs KFCA wanted (and perhaps bill Owner).

44. Defendants rejected or ignored or delayed requests for **reasonable accommodations, modifications** ("**RAM**"), or other least discriminatory action. Owner provided medical records to KFCA. See detailed descriptions of these issues by KFCA, Architect Frank, his company, at

---

[3] See https://www.hud.gov/program_offices/fair_housing_equal_opp/disability_overview; major life activities These life activities are adversely affected by KFCA demands.

Exh.PO22A, 22B, 23A, 23B, 29, 30.

45. Instead of allowing Owner's requests, Defendants demanded substantial administrative proceedings, complex justifications, multiple applications, imposed unreasonable and burdensome conditions, actions that exhausted Owner's limited physical and mental resources, burden Owner and interfere with enforcing FHA civil rights.

46. See Exh #PO10, where KFCA uses 46 pages to justify why it denies Owner's request for no balustrade. The Court can decide whether most of the 46 pages are relevant or an attempt to obfuscate matters, burden Owner.

47. Defendants compelled involuntary labor, implemented or threatened onerous administrative (and legal) proceedings against Owner (e.g., send demand letters, demand meetings, hearings, together with threats of financial harm (e.g., damages, fines) or social harm (e.g., harassment).

**48.** For years, KFCA and/or associates, made Owner's life miserable, forcing him to spend his limited time, labor, physical and mental resources, to benefit KFCA, or otherwise oppose KFCA demands. Owner could not use and enjoy his house, children, friends, his quality of life.

**Statutory and Regulatory Provisions for FHA, modifications, accommodations**

49. 24 CFR §100.201. **Definitions. Dwelling** unit means a single unit of residence. **Building** means a structure, facility or portion thereof that contains or serves one or more dwelling units. **Premises** means the interior or exterior spaces, parts, components or elements of a building, including individual dwelling units and the public and common use areas of a building. **Modification** means any change to a dwelling unit.

**50.** The FHA applies to HOAs. FHA has two different rules for two different types of house "**changes.**" Modifications (change) of a premise occupied by owner (e.g., house, including yard), paid by owner. See 24 CFR §100.203(a). Modifications NOT paid by owner, are treated like

accommodations because they involve a change in RPPS. See 24 CFR §100.204(a), which also

requires equal opportunity.

51. **KFCA rules identify two different types of house changes**. *Modifications required by*

*KFCA*, for its benefit, unnecessary to Owner (cost time, labor, etc., e.g., aesthetic maintenance),

and *modifications needed by Owner*. Both require KFCA approval, or modify its RPPS.

52. Reasonable accommodation includes "changing some rule that is generally applicable so as

to make its burden less onerous on the handicapped individual." [4]

53. "A "**reasonable accommodation**" is a change, exception, or adjustment to a rule,
policy, practice, or service that may be necessary for a person with a disability to have an
equal opportunity to use and enjoy a dwelling, including public and common use spaces.
Since rules, policies, practices, and services may have a different effect on persons with
disabilities than on other persons, treating persons with disabilities exactly the same as
others will sometimes deny them an equal opportunity to use and enjoy a dwelling."
https://www.justice.gov/crt/us-department-housing-and-urban-development

54. Owner meets requirements of 24 CFR §100.203(a) which prohibits refusal of modification;

§100.204(a), duty to make accommodations.

55. It is unlawful for a person to "refuse to permit, at the expense of a handicapped person,
**reasonable modifications** of existing premises, occupied or to be occupied by a handicapped
person, if the proposed modifications may be necessary to afford the handicapped person full
enjoyment of the premises of a dwelling." **24 CFR §100.203(a)**

56. 24 CFR §100.203(a) gives handicapped individuals the right to modify their homes to better

enjoy them. It supersedes KFCA rules. It allows Owner to stay at his home instead of requiring

the government to subsidize a stay at retirement communities.

57. Correction of exterior changes, demanded by KFCA for aesthetic purposes, must be waived

if they are reasonable **accommodations** necessary by Owner to enjoy his home. [5]

---

[4] *North Shore-Chicago Rehabilitation Inc. v. Village of Skokie*, 827 F. Supp. 497, 499 (N.D. Il. 1993), *Oxford House, Inc.v. Township of Cherry Hill*, 799 F. Supp. 450, 462 n.25 (D.N.J. 1992).
[5] The housing provider can, however, deny such an accommodation request if it would (1) be an undue administrative or financial burden, (2) pose a direct threat to safety or health, or (3) result in a significant property damage that could not be reduced by other reasonable accommodations. https://www.justice.gov/crt/us-department-housing-and-urban-development. This exception is not in the law and may not be valid.

It is **unlawful** for a person "to refuse to make **reasonable accommodations** in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit." 24 CFR §100.204(a).

58. A handicapped individual meets the requirements of §100.203(a) or §100.204(a) without

proving the modification or accommodation ameliorates the handicap.

59. Each activity at KFCA (e.g., demand for a balustrade) involves several different FHA

statutes or KFCA rules with different burden of proof. **Example**: to allow Owner NOT to have a

balustrade, KFCA may allow the modification of no balustrade, or change a rule to remove

requirement for a balustrade.

60. KFCA Charter, bylaws (Exh PO5), states its purpose is to benefit the health and welfare of

owners. It explicitly allows changes to aesthetics, architecture, and landscapes to benefit owners.

> "the central purpose of this Community Charter is to beneficially protect and enhance the general health, safety and welfare of the Citizens of King Farm and to promote opportunities for enrichment of the quality of life of each Citizen of King Farm.".
> "To provide for each Citizen [e.g., Owners'], and all residents unique opportunities to enjoy a social environment that enriches personal and family life through Community congeniality and the operation of an overall spirit about King Farm that it is an especially emotionally and spiritually rewarding place to live." . . .
> "The primary purpose of the Assembly is to own and operate certain properties for the benefit of Titleholders and Citizens and to carry out the responsibilities established for the Assembly in the Founding Documents."
> "it is not the intent of this Community Charter . . . to preclude changes in design standards over time that respond to events that may not have been foreseeable at the time of drafting this Community Charter"  Charter §4-101 King Farm Architectural Design Trust.
>
> **Charter** §1-103 Community Plan. "(a) Purpose. The Community Plan is a dynamic and evolving plan for the development of King Farm. It is anticipated that the Community Plan and the Design Standards and Guidelines will be modified from time to time in order to optimally benefit from individualistic design expressions."

61. Jackson, past President KFCA, stated as follows:

> "King Farm is simply an HOA that repairs streets, crosswalks, sidewalks, maintains common areas, manages finances, pool oversight and maintenance and operates a shuttle bus and community center, etc. Honestly, I think that is enough to keep their hands full." "Cutting grass, removing snow and keeping the community looking good" is about the extent of its duties. (KFCA duties). blog, http://kingfarmbarry.blogspot.com/2020/ (checked 3/11/20).

62. Changes in the visual appearance of the exteriors of structures and the Lots require KFCA approval (Charter §3-102). With damage to a structure clearly visible from the exterior, either Owner repairs it or KFCA repairs and bills Owner (Charter §3-104). Residents cannot take actions that jeopardize their property values (Charter §3-107). KFCA (= Assembly) has an easement to enter lots to meet its Responsibilities (Charter §5-104). Assembly is exclusively responsible for the control and management of any property over which it has responsibilities by virtue of a contract, easement, or agreement.  (Charter §6-102).

*63.* FHA requires KFCA comply with RAM, and reduce adverse discriminatory effects.

64. ***KFCA/ T***rustees requires from Owner a structural change or repair or correction, namely install a new balustrade. KFCA remedies are limited and described by *§3-104 remedies (see* Charter §3-101, Bylaws §1-101) and *§6-102.* Exh. PO5.

65. KFCA requires due process when enforcing its rules, including actions against owners for violations of exterior appearances. "The Board of Trustees shall establish due process procedures for dealing with alleged adverse actions." Charter §3-107.

**Procedures for getting approval for changes to exterior appearances**

66. Owner discusses issues with Manager Ruff or KFCA President, and/or ADT and/or Architect.  Usually, oral discussions are sufficient, Ruff has authority to allow/ approve changes without extended review by other administrators. If required, Owner writes a **Design Review Application (DRA)** with change requested and the reasons for it.

67. The day-to-day affairs, for which the President has oversight responsibilities, shall be administered under the direction and supervision of a Community Manager. The Architect, ADT are decision makers for visual changes (exterior appearances). Visual changes in Lots and improvements thereon shall be under the direction and supervision of the Community Architect,

ADT.  Bylaws §4-101, Charter §4-101. Those recommendations are reviewed by KFCA

Manager (Ruff), President, Trustees, who can agree, disagree, modify, not enforce them.

**68. Owner's modifications (NO balustrade). Owner submit DRA** to Manager, who submits to

**ADT, Architect.** Either the request is approved as is, or approved with modifications, or more

evidence requested or is denied. Owner reviews issues with Ruff or President, who have

authority to accept changes. Then Owner appeals, usually orally at a Trustees' meeting.

**69. Owner requested NO balustrade.** Defendants denied the request.  Defendants claim the

request does not meet KFCA requirements. KFCA reasons to deny are not authorized by FHA,

or its exceptions.

**70. The request of NO balustrade,** was reviewed, denied by Architect, ADT, KFCA

management, President, Trustees. Instead, KFCA approved different types of a new balustrade

instead of approving Owner's request, no balustrade.

71. **KFCA Discriminatory housing practice** is an act that is unlawful under section 3604, 3605,

3606, 3615, or 3617 of FHA. The demand that owner maintain the exterior of his home as

required by KFCA, and install a new decorative balustrade, is a housing practice, which

discriminates against disabled Owner.

**72.** A covered entity violates the FHA when its requirements, known as codes, covenants,

activities, procedures, rules, policies, practices, services ("**RPPS**") have an adverse effect, which

is not supported by a legally sufficient justification, or when the entity prohibits or denies an

activity required by FHA, such as Reasonable Accommodation ("**RA**") and/or Modifications

("**RM**") (together "**RAM**").

73. **Structure of porch roof, balustrade. See Exh.PO3, PO14A, 14B, 14C diagrams/photos**

74. Owner bought a large house because he needed space for himself and his children, with

special features to accommodate his disabilities. Only corner houses were available from the builders to buy with the features Owner needed for his lifestyle and disability (such as more indoor space, large finished 3rd floor/attic).

75. Owner's house has a front porch. On the porch, 1st floor, are long, strong columns that support a roof. The roof has a wood infrastructure and a rubber-like, thin, flat, soft material. Piercing it causes water leaks. Roof had a balcony, which caused water leaks. Owner removed it.

76. In 2024, KFCA demanded Owner installs a decorative balustrade made of columns that support railings (about 8 ft long), or face penalties. It is L-shape, about 40 ft long, heavy. KFCA imposed onerous administrative requirements for approval and rejected request for no balustrade.

77. The **columns are** nailed/screwed to the roof; columns have caulk around their base to prevent water leaks. After each rain, snow, strong winds, they move, accumulate water. The mental, physical effort to search for leaks (e.g., remove water, caulk), requires movement, causes pain, undesirable changes in heart rate, which takes hours to days to recover, worse because of disability. It interferes with thinking, etc. It is practically impossible to find a contractor to perform maintenance each day promptly after winds or rain. This inspection must be done immediately to prevent water damage, and cannot wait weeks. During a typical year, dozens of inspections must take place.

78. But for the KFCA demand for balustrade, Owner would not have harm (no balustrade = no maintenance).

79. KFCA has a large staff that supervises maintenance of buildings, contractors, etc. Defendants can reduce discrimination by the following activities: (a) allow modification by Owner to not have balustrade; (b) waive or not ask Owner to install balustrade; (c) KFCA install and maintain the balustrade required by KFCA Charter §3-104, §5-104 and §6-102.

80. **KFCA must comply with public laws, FHA.** Ignoring Owner's disability is a violation of public law and fiduciary duty to comply with Charter §3-101, Bylaws §1-101. Charter §3-104, §5-104, §6-102 require KFCA to correct alleged aesthetic violations of house. KFCA refused.

81. Decisions by BoT, ADT, President, are limited by Charter §3-101 and Bylaws §1-101, that require all activities, decisions, **rules** (passed or interpreted or implemented), to be consistent and in accordance with Charter and bylaws; comply with public laws. "***Any Founding Document shall take precedence over Community Codes***" (Charter §8-104(b)). If Trustees could decide anything, buyers would not know what they are buying, the Charter is irrelevant.

82. The KFCA Founding Documents allows modifications to benefit owners, or reduce harm to owners. Charter §4-101, §3-107.  KFCA cannot create architectural standards that require time and physical labor to deter ownership by disabled individuals [6].

83. The house purchase agreement has no requirement that Owner's house must have balustrade.

**KFCA responses or justification to Owner's request for compliance with FHA, requests; for RAM; KFCA refused to consider Owner's disability in its enforcement of RPPS**

84. The following are responses to interrogatories to KFCA from Owner, during administrative proceedings, signed by KFCA. They illustrate statements made by KFCA administrator Jackson (past KFCA President and Trustee), statements not withdrawn or changed since they were made (about 2021): (see exhibits PO20, PO21):

> **Interrogatories #1 from Owner**, "Describe in detail all activities or responses KFCA conducted or provided in response to Owner's request for compliance with fair housing act FHA and ADA (which includes requests for RAM by Owner) since January 1, 2017".
> **KFCA responses #1**: "KFCA asserts that the Federal Fair Housing Act ("FFHA") and the Americans with Disabilities Act ("ADA") do not apply to this situation." "The FFHA does not apply since the Respondent has failed to establish a nexus between his disability or disabilities and his request to modify his home in violation of the KFCA governing documents. Accordingly, KFCA is in compliance with FFHA." Exh.PO20

---

[6] If Persons (entities) could avoid FHA requirements by describing architectural barriers as beautiful aesthetics essential to the purpose and function of their business, then everybody would do it, and FHA would lose a chunk of their enforcement authority.

**interrogatories** #4, "Describe in detail your explanation of why KFCA did not discriminate, in any way, against Owner, including disability or family.
**KFCA responses** #4 Exh.PO20, p.O138. "KFCA does not maintain information regarding families or disabilities of Citizens [what KFCA calls residents], therefore none of that is considered during the inspection of properties or the subsequent enforcement action."

85. Plaintiff provided to KFCA adequate evidence for the elements of proof required by FHA.

KFCA alleged Plaintiff did not provide evidence of a nexus between disability and balustrade

(see above) without explaining why the evidence from Owner is inadequate, particularly because

the nexus is easy to infer (installing, maintaining balustrade requires time, labor that harms

Owner). Any entity could avoid FHA requirements by simply denying a nexus.  See Exh.PO21,

document request #18, p.O140; Exh PO20, Interrogatory response #1, p.O137 (top).

86. The decision makers, KFCA management, Trustees, President, architect, usually took actions

consistent with KFCA policy or practice to ignore Owner's handicap. Among other things,

defendants denied RAM, ignored their affirmative duty to assist the disabled Owner and reduce

the adverse effects on him of KFCA RPPS (rules, etc.). These discriminatory RPPS were not

necessary to comply with KFCA governing documents or to investigate alleged violations.

87. "The BoT met on October 27. 2021. After reviewing the matter (Owner's request), the Board voted to deny the request." "The Board found that you had not provided the nexus between your disability and the requested modification." "In order for you to be entitled to the reasonable modification, you must show that the modification is necessary for you to have an equal opportunity to enjoy your home in the same manner as someone who is not disabled." (KFCA wrote Oct 29, 2021, on another FHA request, KFCA did not revise/update).

88. Because modifications do not require evidence of equal opportunity, Burgess, KFCA,

imposed unlawful administrative requirements to prohibit/deny modifications requests. These

KFCA demands are evidence of FHA violation, and should not be tolerated.

89. KFCA and its attorney Burgess demands inappropriate proof of "equal opportunity to enjoy

your home" for Reasonable Modification ("**RM**") 24 CFR §203(a), and refuses to justify KFCA

actions. Example: "We decline to respond to your demands for explanations on various issues in your document and there is no requirement that we do so under the Maryland Homeowners Association Act or the KFCA governing documents." From communications with KFCA Attorney Burgess. Similar statements were repeated at Trustee's meetings when Owner asked questions, by President Scott when Owner asked him questions.

**Purposes of KFCA, restrictions, requirements of founding documents**

90. Because of Owner's disability, Owner has more limited time in life for activities than healthy persons ("**discretionary time**"), due to the need for health care, the consequences of disease. He must eliminate unnecessary tasks to have enough time to take care of his life. Either spend time, money, labor, physical resources (e.g., physical movement) to use and enjoy his home, or spend it to keep his house looking the way demanded by KFCA.

91. In contrast to discrimination by race, where a party may ignore race in its decisions, disability discrimination laws include an affirmative duty to consider the adverse impacts of disability, and ameliorate its adverse consequences (e.g., reduced physical and mental resources). Defendants must choose among alternative actions the one with less discriminatory effect, and/or allow RAM requested by Owner, instead of burdensome administrative complaints.

**2024/5 New Design Review Application (DRA) to install balustrade on roof or alternatives**

92. In September, 2024, Owner was coerced, required (by KFCA administrators/lawyer), to submit to manager Ruff, Trustees, President, ADT, a **DRA** with alternative designs for a new balustrade. See Exh.PO7, p.O29.

93. Owner included a request not to have the balustrade as **RAM**, or as less discriminatory action, a right under FHA.  See Exh.PO8,[7] p.O30-O38.

94. Architect, ADT, KFCA managers rejected requests via email. See details in Exh. PO9,

---

[7] One could assume the Plaintiff installed the new balustrade and immediately removed it as a change.

PO10, PO11, PO12, PO13.

95. These events create new events, new KFCA administrative procedures (preparing application, review by architect and committees, appeal to Trustees, etc.), etc.

96. Manager Ruff, her supervisor President Scott, Architect Frank, ADT, Trustees, all rejected Owner's request. Instead, they approved installation of a balustrade with burdensome technical modifications. Frank and ADT stated the FHA does not apply to the balustrade request.

97. Owner requested Frank/ADT reconsider denial of request. Request denied or ignored. Exh PO8-PO13 are documents with the statement by KFCA administrators and Owner. Exh. PO14A, 14B, 14C illustrate the balustrade, the current roof without balustrade, the location of the roof.

98. Owner appealed decision to Trustees. See Exh. #PO15.

99. On **July 30 2025,** the "**Trustees**" denied Owner's request under the **FHA** to change the porch roof by not installing and maintaining a decorative balustrade. KFCA demanded installation by Sept 15, 2025. See Exh. #PO16. O119.

100. Trustees/KFCA allege they have a county administration decision that Owner must file a request for a new DRA to KFCA, which Owner did in 2024-5. Exh. #PO16. The county decision stated that Owner:

> "He must submit a new design review application to Complainant King Farm Citizens Assembly, Inc. for reinstalling the columns and railings on his roof overhang. He is free to include in his application any feasible method of reinstallation, including one that does not involve piercing the TPO covering the overhang. He must negotiate with Complainant in good faith to resolve any changes or objections Complainant may have with the application and then proceed diligently to reinstall the columns and railings in accordance with the application as approved" (Administrative agency decision in Maryland)

101. Owner complied. One feasible method that does not pierce the TPO, allowed by KFCA rules and FHA, is not installing the balustrade.

102. Further, a state agency or court cannot interfere with FHA rights, FHA requests.[8] FHA

supersedes, replaces, any county or state rule about requiring a new balustrade on Owner's roof.

Neither county nor state agency allowed KFCA to violate the FHA, or required Plaintiff not to

enforce his FHA civil rights. See 42 USC §3615.

103. KFCA administrators continued during 2025 to allege FHA does not apply to the events in

dispute. They continue to claim Owner did not provide a nexus between his disability and the

need for no balustrade. See statements by Architect, KFCA administrators in Exh.PO22A,

PO22B, PO23A, PO23B, PO29, PO30. See Trustee's reasons to deny balustrade in Exh. PO16.

104. Plaintiff explained with facts, details, his justification, reasons to request no balustrade, and

why KFCA arguments, justifications, were meaningless. See Exh. PO17.

105. **RAM requested by Owner is necessary for use and/or enjoyment of his house**[9]

requests reduce pain, movement, time, etc**.** With balustrade, Owner has reduced use and

enjoyment of his house. [10]

106.  No balustrade is necessary to ameliorate the adverse effects disability has on full

enjoyment or use and enjoyment, it is also necessary to ameliorate the adverse effects disability

has on health, e.g., pain and bleeding. No balustrade is necessary, essential, because with

balustrade, Owner cannot use and enjoy house, disability gets worse.

107. Disabled Owner has less time available for complying with HOA requirements, doing

---

[8]  State laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are
invalid.  FHA 42 USC §3615 preempts or prohibits a law that purports to require or permit any action that would
interfere with FHA rights.
[9]  In FHA, the word "necessary" applies to full enjoyment or use and enjoyment. "Necessary" does not include
amelioration of disability or disease. The word "amelioration", "amelioration of disability", does not exist in the
FHA or regulations. Interpreting FHA, e.g., 203(a), modifications, and 204(a), accommodations, according to
SCOTUS means a Court cannot create or insert new words or meaning not in the statute itself.  SCOTUS applies
**textual interpretation.**   For disability, ramps, handrails, wheelchair, cane, dog, ameliorate adverse effects on use
and enjoyment, quality of life. Do not ameliorate disability itself.
[10]  When Congress directly incorporates language with an established legal meaning into a statute, we infer that
Congress intended the language to take on its established meaning. *United States v. Langley*, 62 F. 3d 602, 605 (4th
Cir. 1995). Word "amelioration" is not part of definition of reasonable or necessary.

maintenance in his house, than a healthy person. Supervising contractors (time consuming, requiring movement) causes Owner substantial pain, and lasting disruption of physical and mental health (e.g., loss of sleep, ability to concentrate). No balustrade redresses injuries that otherwise would prevent the disabled Owner from equal opportunity to use/ enjoy his house as a non-disabled person. RAM eliminates unnecessary maintenance that causes greater adverse effects on Owner because of his disability.

108. A healthy person has substantial time in life and can maintain columns. Owner's disability requires time for medical care, increases the time required for common tasks (because moving slowly, having to stop frequently to go to the bathroom, etc.). Because of Owner's impairments, compared with a healthy person, Owner has reduced ability to install, maintain columns, prevent water leaks. Due to disability, to go on the roof causes pain and physical harm to owner as well as being physically dangerous.

**109.** Not installing balustrade removes the physical labor that Owner cannot provide.

110. KFCA RPPS for balustrade reduce Owner's use, enjoy of his home and his quality of life. It harms Owner's property and health. Unnecessary balustrade causes structural hazards due to water leaks and movement; *mitigation or maintenance tasks require involuntary time and labor that go beyond reasonable home maintenance, Owner's need to use, enjoy home*.

111. KFCA rules enforcement deny housing opportunities because they require onerous maintenance for unnecessary appearances, demand substantial physical and mental resources (e.g., labor, time) that Owner cannot provide because of his disability, prohibit reasonable modifications necessary for Owner's use and enjoyment of his house. See Exh #PO6, #PO7.

112. Owner's modifications (no balustrade) are reasonable, ordinary, in private homes,

consistent with the purpose of KFCA (to allow modifications that benefit owner).[11] Many houses

do not have balustrade. ***It costs nothing for KFCA to allow no balustrade***.

113. Absent the requested change, KFCA demands reduce time in life, causes pain, distress.

114. Owner's house has not had a balustrade since 2019. There is no objective evidence of harm

to residents, harm to common areas or other lots (compare with a tree leaning).

115. Since then, every year, KFCA coordinates an annual meeting and an annual report that

explains how KFCA is adequately pursuing its purposes, doing its tasks, without adverse effects

from no balustrade in Plaintiff's home. Nobody has been injured due to no balustrade.

116. Many houses do not have balustrade. KFCA has arbitrary interpretations of need for a

balustrade in Owner's roof. In 2019, KFCA demanded Owner install a new balustrade. KFCA

created two hearings with extensive evidence with BoCC. BoCC stated that "the decision was to

dismiss both complaints". See Minutes of September 9, 2019 and October 14, 2019.

117.  BoCC chair wrote Oct 3, 2019, "Complainant [KFCA] did not provide sufficient evidence

that replacement of the railings were required." (Referring to the balustrade). Exh PO33; p.O205.

**118.** Owner requested KFCA reduce discriminatory effects, provide RAM, comply with 24 CFR

§100.7, other public laws. KFCA refused. Complying with FHA saves time and money to

KFCA; does not alter the nature of the KFCA's operations (e.g., maintain common areas) which

continued for years without fake balustrade in Owner's home.

119. Exhibits PO8 through PO15 are documents exchanged among parties describing KFCA's

explanations and Plaintiff's explanations/justifications for no balustrade.

120. Owner wrote August 17, 2025, to Trustees, KFCA lawyer, KFCA President, explaining

---

[11] "The determination of whether an accommodation is reasonable depends on the answers to two questions. First, does the request impose an undue financial and administrative burden on the housing provider? Second, would making the accommodation require a fundamental alteration in the nature of the provider's operations?" www.hud.gov/program_offices/fair_housing_equal_opp/disabilities/sect504faq#_Reasonable_Accommodation

why Trustees' decision to deny request for no balustrade was unlawful, inconsistent with FHA and KFCA founding documents. Owner requested KFCA justify its denial of FHA request, review its decision in light of a July 2025 4th Cir *Gibson* decision that described how he met burdens of proof for RAM. Exh.PO17. KFCA did not respond.

121. Owner requested KFCA stay adverse actions pending a decision in federal court. KFCA refused to modify its decision, explain it. KFCA lawyer Burgess wrote **On Aug 25, 2025**:

"The Board of Trustees has denied your request that KFCA "stay" any proceedings against you. Accordingly, the deadline(s) for compliance remain in place. Ursula Burgess." Exh.PO18, PO19

122. Owner asked, via email 8/25/2025: "Specifically, what proceedings will KFCA start against me?" No response from Burgess as of Sept 21, 2025. Also see Exh. PO18 for details.

123. About Sept 2 2025, Owner wrote to Burgess and KFCA administrators, requested KFCA administrators, lawyer, explain the adverse actions they will take against Owner after Sept 15, 2025. No response so far. See Exh. PO18, PO19 for details.

124. Owner attended Trustee's meeting Sept 16, 2025. He again requested KFCA justify its actions/decisions, explain the adverse actions it will take against Owner. Trustee's chairperson, Ms. Beckerman, refused to provide specific responses, stating that KFCA already responded. See Exh. PO19 Letter from Owner to KFCA Trustees, President Lawyer Burgess.

125. The new DRA required meetings with Frank and **ADT** to review options to install balustrade and alternatives. Requiring balustrade increases Owner's damages, interferes with Owner's life (due to continuing maintenance requirements), creates hazards from structural damage, the Owner falling during the frequent maintenance or having pain, etc.

**126.** Without **balustrade**, the new roof is one membrane sheet from house wall to edge. See Exh. PO14A, 14B, 14C. With balustrade, the columns move, holes expand with temperature, caulk cracks; water accumulates around heavy columns. (it is not difficult to install columns,

what takes time is the frequent maintenance to prevent water leaks).

127. Maintaining balustrade requires frequent (often weekly), burdensome maintenance, physical and mental labor, climb on the roof, move up and down around four sides of 9 columns, check for water leaks. Disabled Owner cannot do, which causes him harm, e.g., pain, muscular spasms, reduces use and enjoyment of his home. Owner cannot find contractors to do the work.

128. Owner can do basic maintenance in his house. He cannot do the multiple, unnecessary, decorative or aesthetic maintenance mandated by KFCA, which includes balustrade.

129. Owner lived more than 10 years with a similar fake balcony that broke frequently, caused water leaks, required maintenance practically impossible for Owner now. Owner either has no balustrade on his roof, or sells and moves out to a less desirable home because of tasks demanded by KFCA that are unnecessary or counter-productive to use, enjoy the house.

130. Not having a balustrade eliminates installation, maintenance. It reduces the need to spend time, movement, reduces pain, bleeding, etc. Requests thus ameliorate disability effects on health, ameliorate disability effects on use and enjoyment, allow use and full enjoyment. [12]

**KFCA responses or justification to Owner's request for compliance with FHA, requests for RAM; KFCA refused to consider Owner's disability in its enforcement of RPPS**

131. KFCA responses are that (a) FHA does not apply to the disputes; (b) KFCA treats every resident equally; (c) Owner's disability was irrelevant to the issues in dispute (e.g., alleged violations and required corrections). The decision makers, KFCA administrators, do not consider Owner's disability during the inspection of properties or the subsequent enforcement action.

132. For each request, Defendants had a choice allowed by KFCA governing documents: allow RAM, or provide the maintenance demanded by KFCA. Instead, KFCA, Trustees, President implemented the governing documents to make life difficult for Owner, to create onerous

---

[12] The policy of demanding a balustrade is NOT in a document provided to Plaintiff when he purchased his house, not recorded in Montgomery County.

administrative procedures, to have adverse discriminatory effects, to demand physical and mental resources (e.g., time, labor) knowing they would make Owner sicker, cause physical and mental pain, distress, reduce use and/or enjoyment of his home.

133. Public policy and affirmative duty to implement FHA require that KFCA Charter be interpreted to reduce discriminatory effects, and allow (full) use and/or enjoyment of homes.

134. Owner submitted explanations why the balustrade is difficult to install, require onerous maintenance, cause water leaks, and made the reasonable, necessary request not to have it to better use and/or enjoy his house and reduce adverse effects of balustrade on his disability.

135. About January, 2025, Owner wrote to KFCA a request "FHA Compliance regarding railings and other matters" which further explained his FHA request. See Exh #PO11.[13]

136. Knowing the columns had adverse effects on Owner, KFCA had a duty to implement a less discriminatory decision required by 24 CFR §100.7. KFCA administrators who contribute to FHA decisions cannot avoid compliance with disability discrimination laws and regulations by alleging requests for compliance are outside their duties. Otherwise, every person would do it and nullify the law.

137. Frank, ADT, Ruff, Scott, Trustees, each person participated, contributed, in the review of Owner's request (no balustrade), received Owner's requests in writing. Each person had the choice to allow request for no balustrade, or KFCA install or maintain it.

**138.** In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable based on the acts and omissions of its employees, officers, and/or agents.

---

[13] Owner has right to appeal to Trustees the Architect/ADT decision. If he does not, the decision is final, evidence of the importance of the Architect's and ADT's recommendation for rejection. Architect/ ADT have authority to allow no balustrade, as many houses do not have it. When Owner purchased his house, there was no document that required a balustrade. The builder told him that he could remove it anytime.

139. **Owner exhausted KFCA administrative procedures and may file complaint in Court**.

140. Owner asked if KFCA requires that Owner exhaust administrative remedies before filing complaint in federal court. The Attorney for KFCA replied "you have asked for our interpretations of the Assembly's governing documents – especially on the exhaustion of remedies questions – and we are not going to respond to those requests", email Sept 21, 2021. This decision/response has not changed since 2021.

141.  The Trustees' decision rejecting Owner's request is final; no further appeals exist. Thus, Owner exhausted or complied with any alleged internal KFCA procedures.

142. Defendants' RPPS of failing to provide disability-related RAM, requiring extraneous information about Owner's disabilities, and his need for modifications, and unduly delaying the provision of RAM – independently and taken together –are disability discrimination.

143. Defendants' actions constitute: (a) discrimination, in violation of the FHA, 42 USC §3604 et seq, and/or 24 CFR §100.50, §100.65, §100.70, §100.200, §100.400, §100.500 (practices prohibited, the events herein are directly connected to the use of house, e.g., rules or covenants); (b) a refusal to make RAM in RPPS when such RAM may be necessary and reasonable to use and/or enjoy a dwelling, or better enjoy a dwelling, in violation of the FHA, 42 USC §3604(f); (c) interference with the rights of Owner in the exercise, or on account of having exercised, rights protected by the FHA, in violation of 42 USC §3617, §3615, by actions such as filing complaints demanding Owner reinstall balustrade, creating onerous administrative procedures that interfere or delay civil rights; (d) Refuse to respond to requests for FHA compliance, stay.

144. Defendants acted intentionally, willfully, in disregard for the rights of Owner. Defendants' actions constitute a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, or a denial of rights to disabled Owner protected by the FHA.

145. KFCA' response is that they acted in accordance with KFCA Charter that gives them authority to demand Owner provide time, labor, money, to change the exterior of his house to comply with KFCA requirements/ demands. However, KFCA did not have such authority.

146. KFCA is not allowed to expand restrictions on property use (e.g., demand Owner provide time, labor to correct alleged violations) without explicit authority in KFCA Charter. KFCA Charter does not provide authority to restrict property use beyond its explicit written authority.

147. The disputes are about aesthetics, violations of subjective standards or community guidelines about the appearance of architectural decorations (e.g., fake balustrade). KFCA alleges violations of Charter rules, §3-104, §3-102. The KFCA Charter identifies specific remedies for KFCA, such as making repairs and perhaps billing owners.

**148.** Balustrade is a structure; not installing it may violate KFCA **§3-104**. KFCA may waive enforcement or replaces balustrade. KFCA may have authority to **request** the owner fix said alleged violation, or KFCA will fix it. If KFCA fixes it, it may bill the owner. "Should a Titleholder not conform to the provisions of this §3-104, the Board of Trustees is entitled to accomplish necessary repairs or reconstruction." The rule provides no authority to demand labor, only to make repairs. KFCA has authority to enter lot for repairs. Further, FHA provides superseding rights to Owner.

149. **With aesthetic violations**, §3-102, KFCA requires approval or correction as part of a contractual obligation (KFCA considers a deed as a contract with KFCA), or KFCA responsibilities for Community aesthetics. If Owner did not correct alleged violations, KFCA **shall** fix them (required by §5-104, §6-102). Or KFCA can correct them as a least discriminatory action, and review billing with Owner.[14]

---

[14] KFCA cannot create alleged rights not in the Charter. There is no authority for KFCA to demand involuntary labor and force Owner to install a balustrade and prohibit no balustrade.

150. **Defendants violated** 24 CFR §100.7. Defendants could partly comply with §100.7 by allowing Owner's requests, offer contractors and supervise their outcome (which KFCA needs to do anyway). However, they refused.

**151.** If KFCA authority does not exist, then KFCA rejections are invalid and demands to Owner for his time, money, involuntary labor are invalid.

152. **KFCA violated its internal procedures and its decisions appear invalid. The elections for President and Trustees are not valid. Exh. PO26, 27, 28 for details.**

153. Demands for correction of alleged aesthetic violations or rejections of changes require review and recommendation by **Community Architect**; review and implementation by KFCA **Community Manager, KFCA President**. All legal enforcement, such as application of law to facts, require **Community Lawyer. Community Architect, Community Manager, Community Lawyer are specific positions at KFCA defined by** KFCA founding documents which explain their duties, responsibilities, appointment. See Exh.PO5 for details.

154. The President and Trustees, since at least 2019, were not properly elected. The number of eligible voters was inaccurate. Ineligible voters voted in the elections for President and Trustees. The elections committee was not appointed in accordance with governing documents. The Community Architect, Community Manager, Community lawyer were not appointed as required by founding documents (e.g., nomination by President, appointment, approval by Trustees, recorded in minutes of Trustees' meeting) (according to KFCA email, to residents, explaining errors in appointing them). Details, facts on governance mismanagement are in Exh. PO26, PO27, PO28, PO3. The President did not get more than 20% of the votes of eligible voters. [15]

---

[15] In 2024 the President got 323 votes, far less than 20% of eligible voters (over 2,000). Similar for prior years. **Bylaws §4-102.** The President shall be elected . . ., by the vote of a majority of a Quorum of Citizens. **Charter Definitions.** Quorum of Citizens means and refers to the representation of twenty percent (20%) of all Citizen votes entitled to be cast. Charter § 2-104 explains Voting Rights. KFCA may claim an invalid amendment to voting signed by fake or not recognized LLCs and individuals, when amendments require a specific vote. **Bylaws §1-104**

155. Decisions for compliance with KFCA rules, or rejections of Owner's request, were approved by Architect Frank. He claimed to be the **Community Architect ("CA")**. Frank was not hired as **CA** by KFCA. No documents exist whereby KFCA appoints Frank as CA, hires him, and he agrees. Only the official 'Community Architect' can approve or reject Owner's request for no balustrade. Without a valid CA, decisions to deny Owner's requests are invalid.

156. "Frank further responds that there are no contracts between him and Defendant King Farm Citizens Assembly ("KFCA"). Exh PO30, Doc Request #6, p. O192.

157. Architect Frank is apparently employed by a company (abbreviated BFMA) that hired Frank. BFMA may provide Architecture services to KFCA, but, according to documents provided by Frank and BFMA to Plaintiff, Frank and BFMA do not have documents about agreements to be Community Architect for KFCA. See Exh PO22A, 22B, 23A, 23B, 29, 30 with detailed descriptions of arrangements between KFCA, and its Community Architect ("**CA**"). According to KFCA rules, the **CA** must be an individual, not a company (KFCA Charter, appendix). Without agreements with KFCA, Frank is not the **CA**. The CA must agree to comply with KFCA Charter, bylaws, FHA.

158. To enforce appearance rights KFCA needs the community architect, manager, attorney, President, Trustees. They were not properly nominated or elected or approved, as required by KFCA governing documents. KFCA does not know accurately the number of eligible voters, the number of valid votes. The elections committee, not properly appointed, did not verify election results. Previous elections invalid, cannot create conditions for 2020 and later elections.

> "Based on the historical information available, it appears that all Titleholders – regardless of residency status – and Citizens were permitted to vote in the KFCA leadership elections." Exh PO27 email from KFCA, p.O180.

---

**Amendments.** (d) On matters directly affecting the powers and duties of the President, a sixty percent (60%) vote of a Quorum of Citizens shall also concur in such proposed amendment(s) before it (they) become(s) effective.

159. Without proper appointment/election, the decisions by Community Architect, President, Trustees are invalid (the administrators authorized to make decisions under KFCA founding documents, do not exist).

160. Because KFCA lacks a community Architect, rejection by Architect of request is invalid. All KFCA actions that follow are invalid. KFCA does not have evidence the elections were valid. See Exh PO 22A, responses to interrogatories #12, #13, p.O142-3; Exh PO22B, request #8, p.O145; Exh PO23A, 23B.

**Intentional Discrimination; KFCA intentionally ignores disability**

161. Defendants intentionally violated FHA because they created or supported administrative procedures to ignore FHA requests and/or ignoring Owner's disability. KFCA admits it ignores Plaintiff's disability even though Plaintiff provided adequate documents on his disability to KFCA. See Exh PO20, Interrogatory response #4, p. O138. See Complaint ¶84.

**162.** The proposed accommodation/modifications of no columns, no balustrade, will directly ameliorate the effects of disability, e.g., pain/bleeding with movement. No balustrade requires substantially less movement, less stress, less time, less pain. Exh.PO3.

163. **Equal opportunity.** The accommodations requested reduce Owner's time for KFCA tasks, reduce movement, reduce pain, reduce adverse effects of KFCA demands. They provide an equal opportunity to use and enjoy the home similar to non-disabled owners.

**164.** Rejection of Owner's requests cause the Owner to lose an equal opportunity to use and enjoy a dwelling like healthy residents, because he is in greater pain, and has far less time in life, lacks the time, stamina, to use, enjoy his house like a non-disabled individual.

**Adverse consequences of KFCA denials**

165. FHA has no minimum level of actionable harm[16.]

166. Owner provided **involuntary labor** to KFCA to submit design applications to modify balustrade, to respond to KFCA administrative proceedings.

167. With Defendants' demands for administrative paperwork and denials (of Owner's requests for changes), Owner's health deteriorated, he spent more time to maintain his health. Exh.PO3,4.

168. KFCA alleges Plaintiff can hire contractors to install, maintain balustrade. However, KFCA makes Plaintiff personally responsible for maintaining his property as KFCA demands. Although Plaintiff may hire people to do the work, he is personally responsible for finding contractors, creating instructions for work to do, monitoring and supervising the work, and is responsible that the work is completed as required by KFCA. If a contractor fails, *Owner* is personally *liable for compliance*, sanctions, etc. Owner must spend time, movement, to walk around the house with potential contractors to explain tasks, vet them, monitor their work, evaluate completion.

**169.** Not hiring contractors ameliorates effects of disability (on health, pain, use, enjoyment), the additional harm caused by hiring contractors. Thus, not doing work demanded by KFCA, is 'necessary', essential, to ameliorate disability effects, use and enjoyment of home.

170. **KFCA improperly delayed providing adequate responses to FHA requests.** KFCA has an obligation to provide timely responses to RAM. Otherwise, entities would delay responses for years. An undue delay in responding to a RAM is a failure to provide RAM, a violation of FHA. A failure to provide a legitimate justification to reject RAM is a decision not to grant the RAM.

**171.** "The primary purpose of the Assembly is to own and operate certain properties for the benefit of Titleholders" Charter §2-102. See Exh. PO6 for KFCA purposes.

---

[16] FHA has exemptions in its regulations. Regarding discriminatory effects, or amelioration of disability, or use or enjoyment, the FHA and/or its regulations have no requirement for substantial harm, or substantial amelioration of disability, or substantial improvement in use or enjoyment, or an exception for less than 'de minimis' harm. The FHA makes no limitations on the types of disability-related needs that may entitle a person to an accommodation.

172. **Forfeiture Divested KFCA's Enforcement Rights; Revival Did Not Restore Them**

Maryland requires that corporations file an annual report describing property used in business, and pay an annual tax. Maryland keeps an online data base of corporations. Filings of annual reports and tax payments are at https://egov.maryland.gov/BusinessExpress/EntitySearch.

173. The corporation **KFCA** holds the rights to enforce its Charter (Charter §1-101 and §2-101, Exh #PO5). According to KFCA §2-101, every Titleholder is vested with such rights and obligations of KFCA Charter. Enforcement of changes to exterior of private homes requires right to sue Owner, which is divested, lost during forfeiture.

174. KFCA is a Maryland corporation. It failed to file timely annual reports and was forfeited in 1999. Forfeiture means that the Corporation ceases to exist as a legal entity. The KFCA cannot enforce its alleged rights about private home exteriors. Those rights cease to exist, vest elsewhere during forfeiture, and are not reactivated by corporation revival.

175. KFCA divested itself of appearance rights while KFCA was forfeited. KFCA never revived itself properly in accordance with Maryland law. Sufficient evidence on these matters does not exist. Owner reviewed records of KFCA and did not find essential documents. Exh.PO34; p.206.

**KFCA Charter sections or covenants or rules are not enforceable due to forfeiture.**

176. While some contracts by the corporation while the charter was void are validated, *the rights divested while the charter was void are not restored.* After the corporation was forfeited, rights to enforce appearance of private home exteriors upon lot owners, vested elsewhere, and are not revived by corporation revival. Charter §3-102 and §3-104, authorize KFCA to require that Owners maintain the exterior appearance of their home. After forfeiture, KFCA lost those rights.

177. "MD Corp & Assn Code §3-512(2) (2019). **Effect of extension or revival; divested.** (2) All the assets and rights of the corporation, *except those sold or those of which it was otherwise divested* while the charter was void, are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture . . ."

178. Revival, if valid, does not return to KFCA rights to enforce covenants against private homes. Maryland's Declaration of Rights and Constitution, and U.S. Constitution, prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights. Allowing KFCA to obtain rights to demand exterior changes on the homeowner after KFCA was in forfeiture and had no such rights (could not sue owners or enforce those rights, so they were lost), gives KFCA property rights over Owner's home without due process and compensation.

179. Owner requested copies of the records that are evidence that KFCA complied with requirements for elections and revival. KFCA did not provide them, stated the evidence for elections and for corporate revival do not exist. If KFCA has no valid evidence of its elections and revival, it is no longer valid (or its President is not valid). It has no authority to impose appearance standards on homeowners. Exh.PO34; p.O206; oral statements. Responses to discovery requests from KFCA. Exh. PO22A, 22B; p.O141-O145. Documents do not exist.

**Further elements of proof of each claim are in Exh.PO3**

180. Each defendant rejected Owner's FHA request for NO balustrade. Exh. #PO10,16, p.O119.

181. Owner informed and provided medical evidence to all Defendants that he is disabled and meets disability requirements of federal laws. See Exh PO4.

182. The unlawful rejections of Owner's FHA requests were a series of separate acts, repeated frequently, occurred separately every day. KFCA practices are a "continuing violation".

183. Each rule KFCA enforced, and each activity, had daily consequences. With threats of penalties, each day Defendants prohibited owner from implementing his modifications.

184. When Owner spoke with KFCA administrators, including Defendants, they discussed Owner's requests and rejected them. Owner was reminded via emails, KFCA newsletter, conversations with KFCA administrators, **that he must comply with KFCA demands.**

185. Owner was frequently told that his requests were denied, and that it was futile to file the requests every day because they were repeatedly denied as if he submitted them every day, they were a continuing denial.

186. The exhibits have evidence supporting the complaint, the events related to the dispute and the parties. Exh.PO1, lists exhibits. Exh.PO2 is a timeline table, overview. Exh PO3 is an affidavit Owner Personal Health. Exh PO4 AFFIDAVIT Owner Sept 2025 about the events in dispute. Exh PO6 KFCA Tax Form 990 p1 purpose KFCA. Exh PO18  Response to Lawyer Burgess denying stay Aug 2025. Exh PO19  Request STAY as FHA compliance explain actions justification.  Exh PO24 Adverse effects of Owner's disability Discretionary Time. Exh PO31 CV Owner. Exh PO32 cyber stalker emails Feb 2022 and other threats; illustrates harassment at KFCA.

187. **Exhibits** attached to this pleading **are** incorporated herein, **have facts which are elements of proof of each claim.** Each Exhibit is a written instrument, is a true, authentic, accurate copy of its original, integral to the complaint. Exhibits include emails, letters, writings, on which Owner's action is based; they explain or define terms of agreements, rights, duties, entitlements, liabilities, such as communications with KFCA administrators, needed for maintaining exterior appearances of Owner's home.

188. The Exhibits describing communications with parties and events, by their very existence, give rise to the legal rights asserted. They describe facts that create legal rights. Diagrams illustrate the dispute about appearances of balustrade.

**189.** Statements written by Defendants (e.g., Exhibits) are evidence of what they said, Owner does not usually agree with their statements and Owner does not admit they are true statements (e.g., KFCA HOA may not be a legitimate entity because of failure to comply with corporate

laws in MD).

190.  Exhibits (a) describe the terms of Owner's agreements with KFCA and defendants; (b) are used to interpret agreements, and/or KFCA enforcement of agreements, and/or (c) provide notice to parties, describes the issues or events in dispute, and/or (d) define or explain the Owner's and/or KFCA's meaning of the agreements.[17] Exhibits PO3-34 are evidence of harassment, actions by Defendants, letters sent by Plaintiff making requests, justifying his requests, responses by Defendants or other KFCA associates or administrators, statements by KFCA administrators, and other facts that support each claim.

191. KFCA restricted/ denied Owner housing opportunities (not maintain balustrade) because of disability, created unnecessary demands with adverse effects and refused to implement KFCA rules that reduced adverse effects (e.g., allow requests or KFCA corrects alleged violations). [18]

192.  Demands for compliance with KFCA are invalid, because at least one of the administrators essential for demands does not exist (e.g., Community Manager or Architect does not exist, cannot make demands, President not properly elected) or Corporation appearance rights divested or Corporation status is not valid, cannot enforce alleged rights.

193.  A failure to provide a legitimate justification to reject FHA requests is in effect a decision by KFCA not to grant the requests by ignoring FHA (invalid justification).

194. The changes or modifications requested by Owner are essential for him to fully enjoy his house. Without modifications, or with KFCA demands, he cannot fully enjoy his house. He must spend substantial time and involuntary labor complying with KFCA, move substantially around the yard, experience pain and loss of stamina, and cannot sleep well. Supervising contractors makes his health worse and causes pain. Owner knows these facts from personal experience.

---

[17] Court limited complaint to 40 pages. Facts support the inference that each claim is valid; many facts, quotes from Defendants, do not fit page limit.

[18] See 24 CFR §100.70(b); https://www.law.cornell.edu/cfr/text/24/100.70, §100.70(d)(5).

195. Each Defendant contributed to or participated in FHA violations by supporting and/or not opposing KFCA decisions, including rejecting or ignoring Owner's requests or sending demands to Owner via KFCA associates or administrators or its lawyers. President Scott, Trustee Chairperson Beckerman, KFCA rejected Owner's request for no balustrade, demanded new balustrade, rejected request to stay demands pending Court's resolution of these issues. Defendants did not comply with duties required by FHA, 24 CFR §100.7.

196. Denying stay caused distress to Owner, irreparable harm to brain, heart, worse in susceptible people like Owner (given his heart, GI conditions).[19]

**197. Plaintiff incorporates previous paragraphs** in each of the claims/counts below. Counts I-IV apply to all Defendants. Counts V-VIII apply only to KFCA.

**Count I. Refused Modification No balustrade, 24 CFR §100.203(a)**

198. Disabled Owner lives at the house of his choice. Defendants repeatedly refused Owner's request for the modification **reasonable** (ordinary, feasible), **necessary** to fully enjoy his house, paid by owner, of roof design without balustrade, requested by Owner in 2024-5.

199. No balustrade eliminates time, labor, adverse health consequences of installing, maintaining forever an unnecessary balustrade. It is necessary, essential to fully enjoy house.

200. Defendants' alternative (build, maintain balustrade) is not reasonable, not effective, cost more, reduce enjoyment of house, require time, labor, movement, for installation and maintenance. Defendants do not meet exceptions allowed by FHA. 24 CFR § 100.10.

201. Defendants threaten Owner now, immediately, with penalties and administrative procedures unless he installs/maintains balustrade. KFCA threats (which they refused to stay) cause severe distress, irreparable physical and mental harm.

---

[19] "Evidence shows without question that stress damages the brain." Book review of The end of human exceptionalism Science Vol. 389, No. 676404 Sep 2025:983-983.

**202.** Owner cannot comply with KFCA demands, cannot hire contractors to comply, cannot supervise contractors for maintenance. With balustrade, he cannot fully enjoy his house.[20]

**203.** Defendants have no reasonable justifications to deny request. There is no cost to KFCA, no harm to KFCA, no changes in its purposes.

## Count II. Refused balustrade Accommodation, 24 CFR §100.204(a).

**204.** Defendants refused the **reasonable** (ordinary), and **necessary** accommodation requested by Owner, of waiving requirement for balustrade.

**205.** No balustrade removes onerous involuntary labor, movement, that harms Owner due to disability, provides equal opportunity to use and/or enjoy his home, ameliorate disability effects. See additional details **Count I.**

## Count III. Intentional FHA Discrimination by KFCA for balustrade.

206. Owner is disabled. Defendants ignored FHA requirements to consider disability, alleged FHA does not apply.

**207.** Defendants intentionally rejected request of no balustrade or KFCA maintain it, alleging FHA does not apply because Defendants ignore Owner's disability. Defendants knew what they were doing.

## Count IV. Adverse effects Discrimination by KFCA, balustrade

**208.** Defendants implemented actions that caused adverse effects on Plaintiff due to his disability. Defendants refused to implement actions (e.g., allow no balustrade) that reduce their adverse effects, required by FHA, 24 CFR §100.500, 24 CFR §100.7.

209. **Count V. Declare KFCA has no valid, legitimate community architect ("CA"),**

---

[20] Plaintiff did not find precedent that the word 'necessary' includes ameliorate disability for modifications. This interpretation is not in the text, not decided in 4th Cir. Reading the 4th Cir citation in *Bryan*, ameliorates disability means ameliorate the effects disability has on enjoyment, quality of life (like a close parking space), not on health or bleeding (like pain pills). Nevertheless, Plaintiff includes sufficient evidence for different interpretations.

**President, Trustees due to errors. Thus, KFCA cannot reject Owner's request for no balustrade**

210. At all times relevant for the issues in dispute, KFCA did not nominate, appoint, approve, the **community architect** as required by KFCA founding documents.

211. At all times relevant for the issues in dispute, KFCA did not have an elections committee, candidates authorized to run for elections, a list of eligible voters, a system to verify that only eligible voters voted and voted only once, a method to count votes from eligible voters.

212. At least once, since 2001, KFCA did not comply with its administrative procedures (required by governing documents) to elect KFCA President. For some elections, KFCA President did not get the minimum votes required by KFCA Charter and bylaws. KFCA did not elect a legitimate President for 2018 or 2020 or 2022 or 2024.

213. KFCA sequence of elections for President and for Trustees are invalid for some years, at least after 2018, and thus all elections afterwards, and their actions, are invalid. Exh.PO56,PO58.

214. KFCA did not comply with its administrative procedures (required by founding documents) to nominate and appoint the **Community Manager (Ruff), Community Architect (Frank), Community lawyer (Burgess),** at least since 2018. Their actions are invalid.

**215.** Without a legitimate President at any time, the election committee that the President nominates to conduct the elections is invalid, and election that follows is invalid. Decisions to reject Owner's requests are invalid and therefore violate FHA.

216. **Count VI. Declare KFCA rights to enforce exterior appearances are void, they vested elsewhere when KFCA was forfeited and do not revive automatically.**

217. KFCA was forfeited (as a Corporation). While forfeited, it is legally dead. When the Corporation KFCA is dead, its only business during forfeiture is terminating activities. While

dead, KFCA cannot enforce its Charter against owners, KFCA cannot demand correction of alleged violations, changes in exterior appearances. Thus, owners acquire the right to change their house exterior without KFCA approval (because KFCA is not in business).

218. Thus, alleged appearance rights divest to others, are lost. Maryland law prohibits revival of divested rights. [21] See MD Corp & Assn Code §3-512(2).

**219.** Without appearance rights, KFCA cannot demand Owner install a new balustrade.

**Count VII. Declare KFCA is not lawfully revived**

**220.** KFCA requested revival after forfeiture (Exh.PO25) in 2000 (public record). Maryland law required Trustees meet and restart the Corporation. KFCA never had the required meeting of Trustees, minutes of such meeting, paperwork to comply with Maryland law. KFCA never provided evidence otherwise (evidence that Owner requested).

**Count VIII.  Declare Breach of Contract.  No authority for demands.**

221. KFCA wants a new balustrade to maintain community appearances. KFCA may install it under KFCA Charter §3-104, or §6-102, but cannot compel Owner to install a new balustrade because doing so violates its founding documents and the FHA.

**222.** KFCA has no legitimate authority to demand involuntary labor for Owner to install a new balustrade or replace a previously existing balustrade or anything similar.

**WHEREFORE,** Plaintiff/ Owner seeks relief, asks the Court to enter ORDERS: (a) Defendants' actions violate the FHA and/or its implementing regulations; (b) Enjoining each Defendant, its officers, employees, agents, successors and all other persons, from (i) enforcing demands that Owner put balustrade on his roof, and/or refusing to permit **reasonable modifications (RM)**

---

[21]  All powers granted to corporations, after forfeiture, shall be inoperative, null, and void. *Atlantic Mill & Lumber Realty Co. v. Keefer*, 179 Md. 496 (1941). Revival does not restore rights that were lost during the period that the charter was forfeited. *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095 (2004). "Revival of the Corporation could not restore to it a right that had devolved upon others during the period of corporate non-existence." *Research & Developmt Institute of MD, Inc.* v. *Gutbrodt*, 46 Md. App. 21 (1980).

paid by Owner, **necessary** to afford full enjoyment of his house; (ii) enforcing the Charter sections in a manner that discriminates because of disability; (c) Ordering Defendant(s) to take affirmative steps to (i) ensure compliance with FHA, including steps to prevent the recurrence of discriminatory conduct and to eliminate/ reduce the effects of its unlawful housing practices described herein; (ii) restore the Owner, as nearly as practicable, to the position he would have been in but for the discriminatory conduct; (d) Awarding monetary and compensatory damages, pursuant to the FHA, 42 USC §3614(d)(1)(B), to the Owner, aggrieved person, in an amount that would fully compensate Owner for his injuries caused by the conduct of Defendants alleged herein; awarding monetary damages for loss of income due to lack of physical and mental resources (e.g., ability to concentrate) to write/ sell books, etc. (e) Award punitive damages to Plaintiff to punish Defendants for the willful, wanton, and reckless conduct alleged herein, so it would effectively deter similar conduct in the future; assessing a civil penalty against each Defendant for each separate violation (see 42 USC §3614(d)(1)(C)) to vindicate the public interest; (f) Declare that Defendants' discriminatory policies, practices, and conduct, the practices of refusing to authorize RAM, violate the FHA; require KFCA to apply the appropriate requirements for modifications under 203(a) and accommodations under 204(a);

(g) For modifications, KFCA must determine if they increase enjoyment of private homes (which makes them necessary), if they are feasible, the kind of modifications done in private homes, and do not harm others in measurable ways. KFCA must propose the alternative than imposes least adverse burden on owners, make it explicit in its demand letters.

(h) Enter an injunction enjoining Defendants and their directors, officers, agents, and employees from continuing to publish, implement, enforce, or otherwise engage in the illegal conduct described herein and directing Defendants and their directors, officers, agents, and employees to

take all affirmative steps necessary to remedy the effects of that conduct and to prevent

additional instances of such conduct or similar conduct from occurring in the future; pay all

statutorily-required damages and prohibiting any further violations of the relevant laws;

**(i)**   Award Plaintiff its reasonable attorneys' fees, costs (42 USC §3613(c)(2)), interest;

compensate for the time spent on these matters to make him whole. Additional relief as the

interests of justice may require.

**DECLARATORY RELIEF**: that this Court declare that defendants are liable for costs of

corrections of alleged violations that they impose because of their responsibility to enforce

exterior appearances or aesthetics. See Charter §6-102, 28 USC §2201; that KFCA lost alleged

appearance rights, is not properly revived, its governance is invalid, and other appropriate

findings.

### Certifications

Under FRCP 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully, E. Siguel, *pro se.*                    Sept 22, 2025
501 Crooked Creek Dr., Rockville, MD 20850. Phone = 301 869 0836. Please do not leave a voice message because the recording does not work. Email = kfhoaccoc@outlook.com. (alternative kingfarmhoa@hotmail.com).