IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EDWARD SIGUEL,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-25-3145 |
| **KING FARM CITIZENS ASSEMBLY, INC.,** *et al.*, | * | |
| | * | |
| Defendants. | | |

**MEMORANDUM OPINION**

Since 2019, Edward Siguel has been in an ongoing dispute with his homeowners' association over the requirement that he install and maintain a balustrade (or decorative balcony) on the front of his home. Siguel insists that requirement, among others, violates the law, and so he filed suit against the association in 2022—a suit that remains pending in this district. In 2025, Siguel—apparently frustrated with adverse rulings in the 2022 case—filed another lawsuit against the homeowners' association, asserting similar allegations regarding the balustrade requirement. After this Court dismissed Siguel's second-filed suit as duplicative of his first-filed suit, Siguel asked the Court to vacate its dismissal order and reinstate the case. Siguel's request is denied.

**I.  Background**

**A.  Siguel's 2022 Case**

To understand why the Court dismissed Siguel's second lawsuit as duplicative of his first, a fulsome explanation of the allegations and procedural history of the first-filed suit is necessary.

**1.  Siguel's allegations**

On March 21, 2022, Siguel filed suit against the homeowners' association, King Farm Citizens Assembly, Inc. ("King Farm" or "KFCA"); trustees Susan Beckerman, Tracy L. Jackson,

Christopher Leschack, Richard Ricciardi, and Matthew Roh; president and/or trustee Donald B. Jackson; past trustee Nancy Paul; Bennett Frank McCarthy Architects, Inc. ("BFMA"), architect Laurence Frank; architectural design trust member Karen Sicard; and King Farm's general manager Brandi Ruff. ECF 1, ¶¶ 10–13.[1] On October 13, 2022, Siguel filed an amended complaint. ECF 22. He added Martin Green, who had been president of King Farm, and King Farm's attorney Ursula Burgess as defendants. *Id.* ¶¶ 27–28.

In a nutshell, Siguel alleged that his physical disability prevents him from complying with King Farm's onerous restrictions on the appearance of the exterior of his home and with the association's home maintenance requirements. Siguel further alleged that King Farm has denied his request for relief from the requirements and a reasonable accommodation for his disability. More specifically, Siguel alleged the following in his amended complaint.

Siguel has a disability that "causes physical pain, muscular weakness, bladder blood, (which increases with movement), mental disruptions" and "involves key organs, including kidney, bladder, prostate and Gastrointestinal tract." *Id.* ¶ 39. He alleged the disability makes him fatigue easily and interferes with "sleep, physical tasks, and supervis[ing] contractors," and treatment occupies "several hours" of each day. *Id.* ¶¶ 39–40; *see id.* ¶ 138. Siguel added that his children's special needs and disabilities, which require "highly complex health care and behavior modifications," also occupy his time. *Id.* ¶ 45.

Siguel explained that he chose to purchase his home in the King Farm community and to make "substantial modifications [to his home], which cost over $200,000," because there were "explicit words [in the] [King Farm] Charter . . . to protect Owner from onerous maintenance." *Id.*

---

[1] In this discussion of the 2022 case, the ECF numbers are from *Siguel v. King Farm Citizens Assembly, Inc., et al.*, No. GLS-22-672 (D. Md.).

2

¶ 36. As Siguel read the Charter, King Farm "assured [him] that they would comply with disability anti-discrimination of public housing laws and would agree to reasonable modifications and accommodations" and that "if he needed help with house maintenance, KFCA would help him because that was the purpose of KFCA, explicitly stated in KFCA Charter." *Id.*; *see id.* ¶¶ 125–27.

Siguel claimed King Farm did not comply with his understanding of the King Farm Charter. He alleged that King Farm "create[s] rules restricting the appearance, use and enjoyment of [his] house," and "mandates [he] spend time and labor to change his home appearance (aesthetics) to benefit KFCA, or else be punished," even though the "frequent, burdensome maintenance, physical and mental labor, climb on roof, move up and down around four sides of 9 columns, frequently check caulk for water leaks . . . causes him harm, e.g., pain, bleeding, muscular spasms" and "reduces use and enjoyment of his home." *Id.* ¶¶ 1–2. Siguel asserted that King Farm's maintenance requirements are more onerous for him due to his and his children's disabilities and the location and size of his house. *Id.* ¶¶ 46, 50, 53, 104.

Siguel explained that King Farm "prohibits changes to the exterior of [his] house without KFCA approval." *Id.* ¶ 34. Siguel claimed he asked King Farm for a reasonable accommodation for his disability or a modification to the Charter requirements, but King Farm "refuses [his] requests for Reasonable Accommodations . . . or Modifications . . . or both." *Id.* ¶ 2. Siguel provided several examples: one concerning the balustrade, one concerning a brick patio, one concerning a plant trellis, one concerning the placement of a shed on his porch, and one concerning the placement of a shed behind his home.

Starting with the balustrade, Siguel stated that his front porch originally had a flat roof with "architectural barriers, decorative columns and railings ('fake balcony', a.k.a. balustrade)," but the

3

columns "caused water leaks [and] damaged the roof," so he replaced the roof "but did not reinstall [the balustrade] due to the damage it would cause again." *Id.* ¶¶ 37, 103–07. King Farm insisted he reinstall the balustrade. *Id.* ¶¶ 1–2. Siguel did not want to "have a fake balcony/balustrade . . . on his roof" or, if he had to have a balustrade, he wanted to have King Farm "install and maintain it." *Id.* ¶ 2. As Siguel saw it, he was within his "rights [as] a disabled Owner to modify his house exterior for full use and/or enjoyment [as] authorized by [the] Fair Housing Act." *Id.* ¶ 1.

Turning to the other requested accommodations, Siguel alleged King Farm refused to allow him to install a storage shed behind his house, "mov[e] a small horizontal shed onto his [front] porch, build[] a small patio of brick over soil, necessary to walk over mud, have a plant Trellis, and other modifications." *Id.* ¶¶ 3, 34; *see id.* ¶¶ 239–48. Siguel explained that he wanted to make these changes so that he could access his lawn and gardening tools more easily and with less pain and so that he could walk across his yard safely, without slipping and falling. *Id.* ¶¶ 243, 246–49.

Siguel alleged King Farm inspected and photographed his property and charged him with violations of the homeowners' association Charter in 2018 and 2019. *Id.* ¶¶ 55–56. In 2019, Siguel began asking King Farm to waive the exterior home requirements. *Id.* Siguel asserted that "[e]very day KFCA may decide [he] violates KFCA appearance 'standards', send demand notices, schedule hearings, start litigation for the same demands made in 2019, unless [he] provides substantial physical and mental resources (e.g., time, labor, money) to satisfy KFCA arbitrary aesthetics." *Id.* ¶ 178 (emphasis in pleading removed).

Siguel claimed that King Farm's demands that he reinstall the columns on his porch room were "inconsistent and not in accordance with" the community charter and bylaws. *Id.* ¶¶ 76, 94–95. He insisted that King Farm's "Founding Documents, either authorize or require that KFCA do repairs or maintenance due to KFCA demands (e.g., install columns)," and failure to do so violates

4

the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, "has adverse discriminatory effect, and violates KFCA fiduciary duty" and the U.S. Constitution. *Id.* ¶¶ 77, 99. Siguel asked the Court to order the defendants to comply with the FHA and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq. Id.* ¶ 3. He sought monetary, declaratory, and injunctive relief under these statutes, federal regulations, "and other applicable federal and state laws." *Id.* ¶ 18. His amended complaint included four claims for violations of the FHA based on conduct relating to the balustrade (Counts I–IV), additional claims for FHA violations based on conduct relating to Siguel's shed, patio, and trellis, and the defendants' handling of the administrative process (Counts V–VI), a claim that King Farm's "rights to enforce exterior appearances are void" (Count VII), a claim for discrimination (Count VIII), a claim for failure to provide reasonable accommodations (Count IX), and a claim for "Violation of Forced Labor Laws" (Count X). *Id.* at 79–84.

**2. Procedural history**

On February 28, 2023, the parties consented to proceed before a magistrate judge for all proceedings, and the 2022 case was transferred to Magistrate Judge Simms. ECF 68, 69. In response to Siguel's amended complaint, the defendants filed motions to dismiss, which the parties briefed extensively. ECF 33, 34, 39, 43, 49, 50, 51, 63, 64, 67. On October 12, 2023, Judge Simms granted the motions in part, dismissing all claims against Beckerman, Tracy Jackson, Leschack, Ricciardi, Roh, Donald Jackson, Paul, Ruff, Green, and Burgess and almost all claims against King Farm, BFMA, and Frank. ECF 85. Judge Simms dismissed the FHA claims related to the balustrade because Siguel did not sufficiently plead that the accommodations he sought were necessary, as the FHA requires, because they would not "'directly ameliorate' the effects of [Siguel's] disability." ECF 84, at 24–25. The only count that survived the motions to dismiss was Siguel's claim in Count VI related to his request to install storage sheds on his front porch and in

5

the back of his house. *Id.* BFMA, Frank, and Siguel moved for reconsideration. ECF 93, 94. On July 3, 2024, Judge Simms denied the motions for reconsideration, ECF 119–22, and issued a scheduling order. ECF 124.

On July 9, 2024, Siguel requested permission from the Court to file a motion for leave to file a 65-page second amended complaint. ECF 126. Siguel insisted that he "ha[d] adequate facts to amend [the] complaint to meet all elements of each claim." *Id.* at 1. The defendants opposed his request. ECF 128, 129, 130. Siguel filed a reply, styled as a motion for leave to amend. ECF 133. Judge Simms directed Siguel to file a proposed second amended complaint not to exceed 40 pages. ECF 134. On August 21, Siguel filed a 40-page proposed second amended complaint that did not restate the allegations in the amended complaint but rather "incorporate[d]" the first amended complaint, corrected some details, and augmented the factual allegations. ECF 137-1; *see* ECF 137, at 2 (cover ltr.). Siguel's proposed second amended complaint removed the ADA claim and the claim for involuntary labor, and it bolstered the facts in support of the other claims, including the claim concerning the balustrade. *Id.* Among other allegations, Siguel stated that "Defendants continue to threaten [him] with penalties and administrative procedures unless he installs/maintains" a balustrade. ECF 137-1, ¶ 493; *see id.* ¶ 507 ("KFCA never withdrew its demands and continues to retain an alleged right to enforce them at any time, which do not allow [Siguel] to use and enjoy [his] house like [a] healthy owner."); *id.* ¶ 527 ("Demands by KFCA, adverse actions against [Siguel] about [the balustrade], are continuing, denials every day, with periodic denials during meetings with manager, Trustees, President."). The defendants opposed the motion for leave to amend. ECF 140, 143, 150. Judge Simms held an on-the-record telephonic hearing on September 26, 2024 and denied the motion for leave to amend. *See* ECF 155.

On August 6, 2025, after the parties had engaged in discovery for several months, Siguel asked Judge Simms to reconsider the October 12, 2023 dismissal of his claims relating to the balustrade in light of a recent FHA ruling by the U.S. Court of Appeals for the Fourth Circuit, *Group Home on Gibson Island, LLC v. Gibson Island Corp.*, No. 23-2295 (4th Cir. July 15, 2025). ECF 191. On November 25, Judge Simms notified the parties she would not rule on the motion for reconsideration until after the parties participate in a settlement conference, which is scheduled for March 9, 2026. ECF 209, 219.

On December 16, 2025, Siguel sought leave to file a motion to stay King Farm's ongoing demands that he install the balustrade. ECF 213. On December 19, King Farm filed its response. ECF 216. On December 23, Judge Simms granted Siguel leave to file the motion, ECF 217, which he did on January 8, 2026, ECF 218. In his motion, Siguel asserted that King Farm is asking the State of Maryland to order him to comply with King Farm's demand that he install the balustrade. ECF 218, at 1. He reiterated his factual allegations regarding the balustrade and added that, in October 2025, King Farm filed a "demand for enforcement" with the Montgomery County Commission on Common Ownership Communities ("CCOC"), asking that Siguel be charged $500 each day that he does not reinstall the balustrade. ECF 218-1, at 6–7, 19.

Additionally, an exhibit attached to Siguel's motion describes August 2025 communications between Siguel and King Farm's attorney, Burgess, in which Siguel asked King Farm not to demand installation of a balustrade while his federal case was pending, and King Farm refused. ECF 218-2, at 1–2. He asks Judge Simms to reinstate his claims regarding the balustrade and to order King Farm to allow him to maintain his porch roof without a balustrade or, at the very least, to enjoin King Farm from enforcing any CCOC order and from demanding that he install the

7

balustrade while his federal case is pending. ECF 218, at 1–3; ECF 218-1, at 19. King Farm's response is due January 30. ECF 217.

### B. Siguel's 2025 Case

Meanwhile, on September 23, 2025—while his August 6, 2025 motion for reconsideration of the order dismissing his claims regarding the balustrade was pending before Judge Simms—Siguel filed this lawsuit against King Farm asserting similar allegations about the installation and maintenance of a balustrade. In this suit, Siguel sued King Farm, its President Paul Scott (who has replaced Green), and its Chairperson Susan Beckerman. ECF 1.[2] In his cover letter, Siguel admitted that his 2022 case still was pending in the District of Maryland, but he took the position that the 2022 case "does not involve President Scott" and that the new complaint involved "different events in 2024/2025 (long after the 2022 complaint was filed)." ECF 1-2, at 1–2. Siguel noted that, in the 2022 case, Judge Simms had denied his motion for leave to amend his complaint to reallege the claims regarding the balustrade that had been dismissed. *Id.* at 2.

Siguel set the same stage in his 2025 complaint as in his 2022 complaint: He has disabilities—the same disabilities described in his 2022 complaint—that make activities painful for him, cause him to bleed when he moves, and cause him to fatigue easily. *Id.* ¶¶ 35–36. He purchased his home in King Farm in reliance on explicit language in the King Farm charter "protecting Owner from onerous maintenance" and King Farm's assurances that "if he needed help with house maintenance, KFCA would help because that was the purpose of KFCA." *Id.* ¶¶ 32–33. He alleged that "KFCA rules and assurances were essential" and "a substantial factor in [his] decision to pay for substantial house options (e.g., stronger floors, insulation, etc.)" because he "had disabilities at [the] time of purchase that made it difficult or impractical to maintain exterior

---

[2] ECF numbers now refer to the docket in DLB-25-3145 unless otherwise noted.

appearances of his house." *Id.* He claimed that, despite these assurances, King Farm is demanding home maintenance that he is unable to perform. *Id.* ¶¶ 5, 105–09. These allegations are substantively identical to the allegations in the 2022 case.

To be sure, Siguel's 2025 case is narrower than the 2022 case. In this case, Siguel complained only about King Farm's demands for reinstallation and maintenance of the balustrade; he did not complain about requirements related to the trellis, sheds, or patio. Siguel alleged that when he "purchased his house, there was no document that required a balustrade. The builder told him that he could remove it anytime." *Id.* ¶ 135 n.13. He stated that he removed the balustrade in 2019 because it was damaging the roof to his porch and because it was difficult to maintain. *Id.* ¶¶ 77, 114. Again, Siguel described his porch and the balustrade and explained why he removed the balustrade and why he has not replaced it. *Id.* ¶¶ 74–77, 127–28. He alleged, as he did in his amended complaint in the 2022 case, that King Farm denied his request not to have a balustrade. *Id.* ¶¶ 69–70. He also alleged that King Farm "demands that [he] now install, maintain forever, a decorative balcony/balustrade on his roof porch," and the "balustrade harms [his] use and enjoyment of the house." ECF 1, ¶ 5. Once again, Siguel insisted that King Farm "founding documents describe and limit KFCA remedies, authority, to allow KFCA to correct alleged aesthetic violations, but do not give the right to compel Owner to do it." *Id.* ¶ 16. He asked the Court to compel the defendants to comply with the FHA by either allowing him not to have a balustrade or by installing and maintaining one for him. *Id.* ¶ 42.

In the 2025 case, Siguel alleged, for the first time, events from 2024 and 2025 related to the balustrade. He stated that "[i]n 2024, KFCA demanded [he] install[] a decorative balustrade" that is 40 feet long and heavy "or face penalties," and King Farm rejected his request not to install a balustrade. *Id.* ¶ 76. Siguel specifically alleged that, in September 2024, he "was coerced,

9

required (by KFCA administrators/lawyer), to submit . . . a [design review application] with alternative designs for a new balustrade." *Id.* ¶ 92. He stated that King Farm relied on a Maryland administrative agency decision to insist that Siguel file a new application. *Id.* ¶ 100. When he submitted his application, Siguel "included a request not to have a balustrade," which, in his view, complied with the requirement that he include "any feasible method of reinstallation." *Id.* ¶¶ 93, 100. His request was denied on the basis that the FHA did not apply. *Id.* ¶ 94. "Manager Ruff, her supervisor President Scott, Architect Frank, ADT, [and the Trustees] . . . [i]nstead . . . approved installation of a balustrade with burdensome technical modifications." *Id.* ¶ 96. Siguel sought reconsideration, and his request was "denied or ignored." *Id.* ¶ 97. Siguel appealed to the Trustees, and "[o]n July 30, 2025, the 'Trustees' denied [his] request" and King Farm "demanded installation by Sept 15, 2025." *Id.* ¶¶ 98–99. Siguel stated that, in 2025, King Farm "administrators continued . . . to allege FHA does not apply." *Id.* ¶ 103. On August 17, 2025, Siguel notified the defendants that he believed their insistence that he install a balustrade was unlawful and contrary to the King Farm charter, and he asked them to "stay adverse actions pending a decision in federal court. *Id.* ¶¶ 120–21. On August 25, King Farm responded that his "deadline(s) for compliance remain in place." *Id.* ¶ 121. On September 16, Siguel asked King Farm to state what the penalties would be for noncompliance, but King Farm did not answer the question. *Id.* ¶ 124.

   Siguel alleged that the defendants' "unlawful rejections of [his] FHA requests were a series of separate acts, repeated frequently, occurred separately every day." *Id.* ¶¶ 182–85. He claimed that the defendants violated the FHA and the King Farm charter and forced him to provide "involuntary labor to KFCA." *Id.* ¶¶ 143–44, 166. He claimed the defendants refused the reasonable modification he proposed (not to install a balustrade) in violation of the FHA (Counts I & II), intentionally discriminated against him by rejecting his request not to install a balustrade

10

in violation of the FHA (Count III), and caused him to experience adverse discriminatory effects in violation of the FHA (Count IV). *Id.* ¶¶ 198–208. Siguel asked the Court to declare that "KFCA has no valid, legitimate community architect"; that "KFCA rights to enforce exterior appearances are void" because "they vested elsewhere when KFCA was forfeited and did not revive automatically"; and that "KFCA is not lawfully revived" (Counts V–VII). *Id.* ¶¶ 209–19. He also claimed breach of contract. *Id.* ¶¶ 221–22.

When Siguel filed his complaint, he also filed a motion for an injunction. ECF 4. He asked the Court to permanently enjoin King Farm from ordering him to install and maintain the balustrade or at least enter a preliminary injunction to "stay adverse actions of KFCA against Plaintiff pending resolution of this case." *Id.* at 4.

On November 5, 2025, this Court dismissed, sua sponte, Siguel's complaint without prejudice. ECF 7. The Court found that, although the 2025 complaint included new causes of action such as breach of contract, the factual allegations and the alleged wrongs by King Farm and its representatives were the same as in the 2022 complaint. ECF 7, at 2. Citing general principles about the need to avoid duplicative litigation and the imperative to present "claims arising out of a single wrong . . . in one action," the Court dismissed this lawsuit as duplicative of the pending lawsuit. *Id.* at 2 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); and then quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006) (quoting *Myers v. Colgate–Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000)), *aff'd*, 273 F. App'x 256 (4th Cir. 2008)). Dismissal of the case mooted the request for injunctive relief.

Undeterred, Siguel filed a motion to vacate the dismissal order and to reinstate his complaint. ECF 8; *see* ECF 9 (correction of error). The defendants opposed the motion, ECF 10,

and Siguel filed a reply, ECF 11. Siguel then filed an interlocutory appeal of the dismissal order to the U.S. Court of Appeals for the Fourth Circuit. ECF 12. The Fourth Circuit notified this Court that it will not consider the appeal until this Court addresses the motion to vacate. ECF 14, 20.

## II. Motion for Reconsideration

Siguel's motion, styled as a motion to vacate, is construed as a motion for reconsideration of the order of dismissal. When, as here, a party files a motion for reconsideration of an order within 28 days of the order, the Court considers the motion under Rule 59(e) of the Federal Rules of Civil Procedure. *See Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011). "Reconsideration is an 'extraordinary remedy,' to be used 'sparingly,' available on only three grounds: 1) an intervening change in controlling law; 2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest injustice." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (quoting *Pac. Ins. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

Siguel does not seek reconsideration of the dismissal order because there has been an intervening change in the law or because previously unavailable evidence is now available. Instead, Siguel insists the Court should reconsider its dismissal order because the order is "based on errors of facts and law" and "is unjust." ECF 8-1, at 3, 10. As Siguel sees it, this case should not have been dismissed because the 2022 and 2025 "cases are only partially overlapping" and because "the 2025 Complaint involves events and claims that did not exist in 2022 and thus could not have been brought" when the 2022 case was filed. *Id.* at 2. Siguel insists that "the Court could coordinate both complaints, simplify discovery, [and] ensure a quick resolution of all claims on the merits." *Id.* At the same time, Siguel believes "[t]he 2022 and 2025 complaints can and should be resolved independently." *Id.* at 2–3. Siguel states that if the Court "decid[es] soon on the

injunction" and decides in his favor, "Defendants should be willing to settle and drop other claims." *Id.* at 2.

Siguel has not established the need to correct a clear error of law or prevent manifest injustice.

As Siguel concedes, and as the exposition of his 2022 and 2025 complaints shows, these cases concern the same alleged wrongs. Siguel's grievances in both cases center on the deed restrictions imposed and enforced by King Farm, Siguel's difficulties complying with the restrictions due to his disability, Siguel's belief that King Farm would accommodate his disability and either help him comply with or modify the restrictions, and the ensuing conflicts between the parties. *Compare* ECF 22, ¶¶ 1–3, 36–40, 55–56, 76–77, 94–95, 103–07, 125–27, 138, in GLS-22-672, *with* ECF 1, ¶¶ 5, 32–33, 35–36, 74–77, 105–09, 114, 127–28, in DLB-25-3145. In the 2022 case, Siguel discussed several disagreements he has had with King Farm and its trustees, president, and architect regarding what requirements King Farm can enforce and what modifications he should be allowed. ECF 22, ¶¶ 1–3, 34, 55–56, 239–49, in GLS-22-672. The conflicts included whether he may have a brick patio on the soil in his backyard, a plant trellis, a shed on his porch, and a shed behind his house, and whether he must reinstall and maintain a balustrade on the roof of his porch. *Id.* ¶¶ 1–3, 34, 37, 103–07, 239–48. The allegations and claims in the 2025 case only concern the balustrade. *E.g.*, ECF 1, ¶¶ 5, 69–70, 74–77, 114, 127–28, 135 n.13, 198–208, in DLB-25-3145.

It is true, as Siguel points out, that his allegations in the amended complaint in the 2022 case end in October 2022, when Siguel filed the pleading, whereas the allegations in the 2025 complaint concern events that occurred in 2024 and 2025, when King Farm made new demands that Siguel install and maintain a balustrade and Siguel refused to comply. *E.g.*, *id.* ¶¶ 76, 92–100,

13

103, 120–24. In his motion to vacate the dismissal order, Siguel explains the timeline. In 2021, after King Farm "filed a complaint with . . . **CCOC**," CCOC "ordered Plaintiff to submit a new Design Review Application (**DRA**) to install a different balustrade (a decorative, aesthetic, fake balcony composed of columns/ posts and railings) to prevent leaks," Siguel "appealed the CCOC decision in the Maryland state courts," and while the appeal was pending, King Farm stayed enforcement of the CCOC order. ECF 8-1, at 6–7, ¶¶ 3–4. While that appeal was pending, Siguel filed his 2022 case, "alleging FHA discrimination, including the failure to accommodate his request not to reinstall the [balustrade] as it was." *Id.* at 7, ¶ 5. In 2024, the state court affirmed the CCOC order, and in November 2024, King Farm "directed Plaintiff to submit a new DRA to install a new balustrade and prevent leaks." *Id.* ¶ 6. Siguel proposed that either, pursuant to the FHA, he be allowed "not to install any balustrade" or that he be allowed to use "a different balustrade design that would reduce leaks." *Id.* King Farm denied his request not to install a balustrade. *Id.* And so, Siguel explains, his 2025 case is based on King Farm's 2025 denial of his request not to install a balustrade. *Id.* ¶ 8.

Whatever modest differences there may be between the balustrade-related allegations in Siguel's two lawsuits, it is abundantly clear that Siguel challenges the legality of the same conduct in both cases: King Farm's insistence that he install and maintain a balustrade. This dispute between homeowner and homeowners' association over the installation of a balustrade began in 2019 and continues to this day. *See* ECF 22, ¶¶ 55–56, 178 in GLS-22-672 (King Farm charged Siguel with alleged violations in 2018 and 2019 and "[e]very day KFCA may decide [he] violates KFCA appearance 'standards', send demand notices, schedule hearings, start litigation for the same demands made in 2019" (emphasis removed)); ECF 1, ¶¶ 69–70, 76, 92–100, 103, 120–24 in DLB-25-3145 (King Farm demanded a balustrade beginning in 2019 and then, in 2024 and

2025, threatened "penalties" if Siguel did not propose and install a balustrade). The allegations in this case are a continuation of the allegations in the 2022 case. Because the balustrade-related claims in both lawsuits "aris[e] out of a single wrong," they must "be presented in one action." *Sensormatic*, 452 F. Supp. 2d at 626 (quoting *Myers*, 102 F. Supp. 2d at 1224). And that action is the ongoing 2022 case.[3]

If Siguel wants to pursue claims against King Farm, its trustees, its officers, and its counsel related to the more recent developments in this ongoing conflict about the balustrade, he must seek leave to do so in the 2022 case. Siguel has, to some extent, begun this process by filing a motion for reconsideration of the October 2023 order dismissing his balustrade-related claims in the 2022 case. He also may seek reconsideration of the September 2024 order denying him leave to amend in the 2022 case or file a new motion for leave to supplement to introduce the more recent allegations and to add the current president as a defendant. *See* ECF 8-1, at 14 (Siguel recognizing he could "[t]ry[] to amend the 2022 complaint"); Fed. R. Civ. P. 15(d) (standard for supplementing the pleadings); *Hodges v. Meletis*, 109 F.4th 252, 263 (4th Cir. 2024) (discussing leave to supplement under Rule 15(d)). To be clear: This Court is not opining on whether such motions

---

[3] Siguel argues the cases the Court cited in its dismissal order support his position that his 2025 complaint was properly filed because he could not have asserted the allegations from 2024 and 2025 when he filed the 2022 case. ECF 8, at 2; ECF 8-1, at 3–4. Siguel misreads the law. The Fourth Circuit and the District of Maryland's *Sensormatic* opinions undercut, rather than support, Siguel's position. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 264–65 (4th Cir. 2008) (affirming dismissal of claim filed as second lawsuit because plaintiff filed second lawsuit after court denied leave to amend first lawsuit to add the same claim and "[i]n a claim splitting case, the second suit will be barred if the claim involves the same parties and 'arises out of the same transaction or series of transactions as the first claim'" (quoting *Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir. 2002))); *Sensormatic*, 452 F. Supp. 2d at 626–27 (dismissing lawsuit under the doctrine of claim splitting because, "[l]ike res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action'" (quoting *Myers*, 102 F. Supp. 2d at 1224)).

15

would be meritorious. If Siguel's motions are denied, he may appeal the adverse rulings to the Fourth Circuit. But Siguel may not attempt to circumvent adverse rulings in his first-filed suit or to obtain a faster resolution of his claims by filing another suit and claiming the second suit is based on different allegations that could not have been alleged in the first suit.

The Court did not commit a clear of error of law when it dismissed Siguel's complaint without prejudice. Nor did its order cause manifest injustice due to a misunderstanding of the facts. The motion to vacate the dismissal order is denied.

### III.     Motion for Leave to Amend

Alternatively, Siguel seeks leave to amend his complaint. He wants "to incorporate new facts about KFCA requests to county agency, and prohibition against local government interference with FHA, 42 USC §3615." ECF 8, at 3. He predicts that the CCOC will file for enforcement in state court, after which he will remove the case to federal court "for FHA violations." ECF 8-1, at 9. He predicts that the removal "would leave the federal court with 2 separate complaints and multiple proceedings to decide where to attach the 2025 Complaint, procedures that could take years and require multiple paths due to uncertainty of appeals, etc." *Id*. Siguel suggests that if he is granted leave "to amend his 2025 complaint and incorporate 2025 decisions of KFCA and CCOC," that "may prevent the need to remove (because CCOC should not review FHA claims pending in federal court, §3615)." *Id.*

"[A] district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Katyle*, 637 F.3d at 470 (citing *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc)). When, as here, a party seeks both to vacate a judgment under Rule 59(e) and to amend its pleading, "the broad standard for allowing a court to grant the motion allows the court simply to turn to the standard applicable

to the motion to amend." *Daulatzai v. Maryland*, 97 F.4th 166, 178–79 (4th Cir. 2024) (citing *Laber*, 438 F.3d at 427–28). Under Rule 15(a), a court should grant a motion to amend if there is no prejudice, bad faith, or futility. *Id.* at 177; *Katyle*, 637 F.3d at 471; Fed. R. Civ. P. 15(a)(2).

Siguel does not meet the Rule 15(a) standard. If he were granted leave to amend along the lines that he proposes in his motion to vacate, the amendment would be futile because his proposed allegations concern King Farm's insistence that he install and maintain a balustrade and those allegations must be raised in the ongoing 2022 case against King Farm. Any amended complaint in this case would be subject to dismissal on the same grounds the original complaint was dismissed. Siguel's request for leave to amend is denied as futile.

### IV.     Conclusion

Siguel's motion to vacate the dismissal order, ECF 8, is denied. Siguel's motion for leave to amend, ECF 8, is denied. A separate order shall follow.

January 21, 2026
Date

Deborah L. Boardman
United States District Judge